Ellen HENRY et al.

v.

Seymore HEYISON et al.

Civ. A. No. 78–1536.

United States District Court, E. D. Pennsylvania.

Jan. 10, 1980.

438

Henry J. Sommer, Community Legal Services, Inc., Philadelphia, Pa., for plaintiffs.

Brad Mallory, Michael Deckman, Com., Dept. of Transp., Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This action was instituted by plaintiff, on behalf of herself and all others similarly situated, to challenge certain provisions of Pennsylvania's Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.* (hereinafter the "Act") as they are applied to persons who have had tort judgments discharged in bankruptcy.[1] The issue before this Court is whether certain provisions of the Act are unconstitutional because they conflict with the purposes of the Bankruptcy Code 11 U.S.C. § 525 and therefore run afoul of the Supremacy Clause of the United States Constitution. *McCulloch v. Maryland,* 17 U.S. 316, 4 L.Ed. 579 (1819). Specifically, does the Act by its provisions, subvert the Bankruptcy Code's policy of giving a debtor a "fresh start" after the debtor has had a motor vehicle tort judgment discharged in bankruptcy. Plaintiffs have also raised an equal protection claim in their complaint. For reasons discussed below, the Court finds it unnecessary to reach that claim.

The action is before this Court on cross motions for summary judgment. No genuine issue as to material facts are in dispute and the resolution of this matter is appropriate under Rule 56 of the Federal Rules of Civil Procedure. Accordingly, the Court will proceed to the merits of the Supremacy Clause challenge.

*Factual Background*

As a result of an automobile accident in 1969, a default judgment was entered in the Court of Common Pleas of Philadelphia County against the named plaintiff, Mrs. Ellen Henry, and her husband. The default judgment, entered on March 11, 1971, was never satisfied. Pursuant to the financial responsibility provision of "The Vehicle Code" of 1959, Act of April 29, 1959 (P.L. 58, No. 32),[2] plaintiff Henry's operating privileges were suspended because she failed to satisfy the judgment.

On August 18, 1975 Mrs. Henry's judgment was discharged in a bankruptcy proceeding. Despite the discharge, defendants refused to restore plaintiff's operating privileges until she provided proof of financial

1. In an Order dated September 5, 1979, this Court certified the plaintiff class as "all persons who have been or will in the future be adjudged bankrupt pursuant to the Bankruptcy Act, 11 U.S.C. § 1 *et seq.* and have had or will have their motor vehicle operating privileges suspended pursuant to 75 Pa.C.S.A. § 1741 *et seq.* because of a judgment arising out of an automobile accident; and are now or will be unable to have those privileges restored without providing proof of financial responsibility as required under 75 Pa.C.S.A. §§ 1746, 1747."

This action was originally brought under the old Bankruptcy Act, 11 U.S.C. § 1 *et seq.* Since October 1979, the Bankruptcy Act has been superceded by the Bankruptcy Code. For purposes of this action, however, the underlying policy of giving debtors who declare bankruptcy a "fresh start" is the same under either statute. The House and Senate Reports of the Bankruptcy Code indicate that 11 U.S.C. § 525, the section of the Bankruptcy Code at issue in this case, is intended to be a codification of existing case law in this area. See Report of the Committee on The Judiciary (H.R. 8200), Bankruptcy Law Revision, September 8, 1977, Page 365, (hereinafter House Report). Report from the Committee on the Judiciary, Bankruptcy Reform Act of 1978 (S. 2266), July 14, 1978, Page 81, (hereinafter Senate Report). Thus, the statutory language of the Bankruptcy Code and its pertinent legislative history, as well as the case law developed under the Bankruptcy Act, are all relevant to consideration of this matter.

2. "The Vehicle Code" of 1959 has since been superseded by the "Vehicle Code," Act of June 17, 1976 (P.L. 162, No. 81) (75 Pa.C.S. Section 101 *et seq.*). Chapter 17, which relates to financial responsibility, is essentially similar to the financial responsibility provisions of "The Vehicle Code" of 1959.

responsibility in the form of special "non-owners" insurance.[3] Proof of financial responsibility was not required of other license applicants. Plaintiff never furnished such proof to the State and, as a result, was never permitted to drive. Plaintiff indicates in her belief, that she has been handicapped in finding work because of her inability to drive. She alleges that because of the State's financial responsibility requirement she has been denied the "fresh start" which she believes bankruptcy should have given her.

*Discussion*

Plaintiffs contend that defendants' financial responsibility requirement impinges on the policies of the Bankruptcy Code, and is therefore invalid under the Supremacy Clause.[4] The landmark case in this area is *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) in which the Supreme Court considered a challenge to the Arizona Financial Responsibility Act. The issue before the Court was "whether Ariz.Rev.Stat.Am. § 28–1163(B) (1956), . . . [was] invalid under [the Supremacy Clause] as being in conflict with the mandate of § 17 of the Bankruptcy Act, 11 U.S.C. § 35, providing that receipt of a discharge in bankruptcy fully discharges all but certain specified judgments." 402 U.S. at 638, 91 S.Ct. at 1705. The Court noted that under the Arizona Act a judgment debtor in an automobile accident who failed to satisfy such judgment within 60 days after entry could not regain his license unless he overcame two hurdles. He was required both to satisfy the amount of the debt and to supply the state with proof of financial responsibility. The statute specifically provided that a driver's license and registration "shall remain suspended and shall not be renewed, nor shall any license

or registration be thereafter issued in the name of the person . . . until the person gives proof of financial responsibility . . .." Ariz.Rev.Stat.Am. § 28–1163(A). Under the statute, "a discharge in bankruptcy following the rendering of any such judgment, [as a result of an automobile accident did not] relieve the judgment debtor from any of the requirements of [the Act]." Ariz.Rev.Stat.Am. § 28–1163(B).

The Court in *Perez* indicated that "[w]hat is at issue here is the power of a state to include as part of this comprehensive enactment designed to secure compensation for automobile accident victims a section providing that a discharge in bankruptcy of the automobile accident tort judgment shall have no effect on the judgment debtor's obligation to repay the judgment creditor, at least insofar as such repayment may be enforced by the withholding of driving privileges by the State." 402 U.S. at 643, 91 S.Ct. at 1708. Thus the constitutional question faced by the Court was whether a state statute that protects judgment creditors from financially irresponsible persons "is in conflict with a federal statute that gives discharged debtors a new start 'unhampered by the pressure and discouragement of pre-existing debt'." 402 U.S. at 649, 91 S.Ct. at 1711. The Court declared the Arizona Act constitutionally invalid, and in so holding recognized the primary importance of the fresh start doctrine. "One of the primary purposes of the Bankruptcy Act is to give debtors a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt". 402 U.S. at 648, 91 S.Ct. at 1710 *citing Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

---

3. Proof of financial responsibility is required under 75 Pa.C.S.A. § 1747.

4. The parties have stipulated to the following facts regarding the overall operation of the financial responsibility requirement:

1. In the period of one year preceding the date of this stipulation, twelve thousand (12,000) licensed drivers in Pennsylvania have had an unsatisfied motor vehicle tort judgment against them and as a result have had their driver's license suspended.

2. In a period of one year preceding the date of this stipulation, of those persons whose licenses have been so suspended, three hundred (300) have reported to defendants that their motor vehicle tort judgments were discharged in a bankruptcy proceeding. Approximately one hundred fifty (150) of these persons do not own motor vehicles.

Although the requirements of the Pennsylvania law are less burdensome than those in the Arizona law, this Court finds the Supreme Court's emphasis on the fresh start doctrine equally applicable. The Pennsylvania law does not require an individual with a debt discharged in bankruptcy to repay the debt itself; instead a driver must only purchase the financial responsibility insurance. Under the Arizona law, a driver had to both repay the debt and provide proof of financial responsibility. Thus, the Court, in *Perez*, did not specifically address the issue of whether a state could require a bankrupt to insure himself against future motor vehicle tort indebtedness. It is, however, difficult to imagine a fresh start for a bankrupt individual, if the individual remains saddled with the incidents of prior debts. The Court specifically indicated that one of the primary purposes of the Bankruptcy Act was "to give debtors a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." 402 U.S. 648, 91 S.Ct. 1710 [citations omitted.] Similarly, in the present case, members of plaintiff's class are denied a fresh start. They are required to purchase financial responsibility insurance following bankruptcy proceedings solely because of a debt incurred prior to such proceedings.

Since the *Perez* decision several cases have discussed the fresh start concept in the context of challenges to state statutes. In *Grimes v. Hoschler*, 12 Cal.3d 305, 115 Cal. Rptr. 625, 525 P.2d 65 (1974) the Supreme Court of California ruled that the revocation of a building contractor's license by the state licensing board was invalid in light of *Perez*. Under the State regulation, the licensing board revoked a contractor's license whenever he discharged his business related loans through bankruptcy. The alleged purpose of the regulation was to protect the health, safety and welfare of the public. The Court, however, noted that under *Perez* it was necessary to consider the effect of the regulation. In *Grimes* the effect was to impose additional punishment on those who chose to declare bankruptcy. In effect, the statute required a contractor to pay his bill

in order to retain his license. The bankrupt was clearly deprived of the fresh start that *Perez* mandated. The Court struck down the statute indicating that "it may still offend the purpose of Congress if its effect is to deny to debtors benefits of the Bankruptcy Act." 115 Cal.Rptr. at 630, 525 P.2d at 69.

In two other cases courts have struck down state statutes on Supremacy Clause grounds. In *Rutledge v. Shreveport*, 387 F.Supp. 1277 (W.D.La.1975) the Court held that a police officer could not be fired for violating a rule that prohibited him from filing a petition in bankruptcy. The alleged purpose of the regulation was to insure a reliable and loyal police force by removing the relief that bankruptcy can bring. The theory behind the statute was that if Bankruptcy were removed as an option, officers would not be tempted to incur excessive debts and therefore would not be vulnerable to temptation. The Court held the regulation to be in conflict with the Bankruptcy Act's purpose of providing a debtor with "a new opportunity in life and a clear field for future effort." 387 F.Supp. 1279–1280, quoting *Perez v. Campbell*, 402 U.S. at 648, 91 S.Ct. at 1710.

The other case of note is *Handsome v. Rutgers University*, 445 F.Supp. 1362 (D.N. J.1978). In *Handsome* the Court struck down the State University's practice of withholding students' transcripts when the students were more than three months delinquent in repaying loans. Handsome obtained a discharge in bankruptcy of her student loans; nevertheless the school refused to give her her transcript. The Court found that ". . . [t]he Supremacy Clause prevents a state from frustrating even the spirit of a federal law." The Court therefore held that "[i]nasmuch as defendant, both by withholding plaintiff's transcripts and refusing to permit her to register, has transgressed upon the 'fresh start' policies of the Bankruptcy Act, this Court must hold such motions violative of the Supremacy Clause." *Id.* at 1367.

The above cases demonstrate that courts have defined the fresh start concept to in-

clude matters incidental to the discharge of debts. The contractors license, the job security of a police officer, and the obtaining of a transcript are all matters incidental to the debt discharged. In the present case, the debtor is faced with an analogous situation. If the debtor chooses to declare bankruptcy, he or she may lose an important benefit—that of the ability to drive. Thus, instead of a fresh start, debtors who wish to drive are burdened by the consequences of prior discharged debts and are forced to purchase financial responsibility insurance.

In the instant case, the specific sections of the Pennsylvania Financial Responsibility law at issue are Sections 1743 and 1747.

Section 1743 of the new "Vehicle Code" of 1976 provides, in pertinent part, that:

A person's operating privilege . . . shall remain suspended and shall not be renewed . . . until every such judgment is stayed, satisfied in full or to the extent provided in this subchapter, *and until the person furnishes proof of financial responsibility as required.* 75 Pa.C.S. Section 1743 (emphasis supplied).

Section 1747 of the new "Vehicle Code" of 1976, provides, in pertinent part, that:

Proof of financial responsibility may be furnished by filing evidence satisfactory to the department . . ., if the person has no motor vehicle, that the person is covered by a nonowner's policy having the same limits of liability as are required. Section 104 of (the "Pennsylvania No-Fault Motor Vehicle Insurance Act"). 75 Pa.C.S. Section 1747.

Under the Pennsylvania Act the State will not renew operating privileges if an individual fails to satisfy a judgment arising out of a motor vehicle accident, unless the operator furnishes proof of future financial responsibility. Thus under § 1743, bankrupt drivers cannot obtain a license unless they purchase insurance to prove their financial responsibility. By requiring the bankrupt to purchase such proof, the State insures that bankrupts are not freed of the consequences of their past obligations.

The *Perez* case requires this Court to look beyond the stated purpose of the Pennsylvania statute and consider the effect of the statute on the federal act. The statute discourages the use of bankruptcy by someone in debt. A debtor is forced to buy special liability insurance, despite the discharge. A bankrupt debtor is faced with the choice of either doing without a license or accepting the burden of paying for special liability insurance. Controlling case law mandates that neither of these alternatives is acceptable.[5]

The fresh start doctrine discussed in *Perez* and its progeny, has been codified in the Bankruptcy Code. In particular, 11 U.S.C. § 525 discusses the rights of bankrupts with respect to governmental actions based upon discharged debts.[6] That Section includes in pertinent part:

". . . a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, *discriminate with respect to such a grant against,* deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or

---

5. In *Miller v. Anckaitis*, 436 F.2d 115, 120 (3d Cir. 1970), the Third Circuit explained the necessity of having a license to drive an automobile.

"For the urban poor, in particular, remoteness from the thriving suburban segment of the industrial economy and a deteriorating public transportation system often make use of an automobile the only practical alternative to welfare. There is, of course, the choice of insuring adequately. But for the same urban poor the skyrocketing cost of automobile insurance, for which they pay higher premiums than their more affluent suburban neighbor, often makes that alternative impractical. . . ."

6. It should be noted that under the new Bankruptcy Code, Section 525 is applicable to plaintiff and members of her class as of October 1, 1979, since it forbids discrimination against persons who have filed petitions under both the new Title 11 and the old Bankruptcy Act.

debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case but before the debtor is granted or denied a discharge, or *has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act* . . . (emphasis added).

Title 11 of the Bankruptcy Code went into effect in October of 1979. The House and Senate Reports indicate that Section 525 is an elaboration of what Congress considers the law to be at present. The House Report describes Section 525 as a codification of *Perez v. Campbell.* House Report at 366–367. The Senate Report contains identical language. Senate Report at 81.

▇ The language of the Bankruptcy Code and the supporting House and Senate reports makes Congress' intent clear. Once a debt has been discharged under the Code a state may not treat a debtor differently than a person who never incurred a debt. Thus, although, a state could legitimately require financial responsibility insurance for all its non-owner drivers, the Code prohibits it from treating those with judgments discharged in bankruptcy differently from those who never had such debts. The House Report specifically indicates that while Section 525 prohibits discrimination based solely on the basis of bankruptcy "it does not prohibit consideration of other factors such as future financial responsibility or ability, and does not prohibit imposition of requirements as net capital rules, *if applied nondiscriminatorily.* House Report at 367, U.S.Code Cong. & Admin.News 1978, pp. 179, 538 (emphasis added). Thus, the Court is compelled to decide that the Pennsylvania Act, by its financial responsibility requirement, makes such a discriminatory distinction.

Defendants contend that the discharged bankrupt is not discriminated against by Pennsylvania's financial responsibility requirement since every person who fails to satisfy a motor vehicle accident must provide proof of future financial responsibility. In their brief, defendants focus exclusively on the language in Section 525 which prohibits discrimination because of the bankruptcy itself. They therefore contend that bankruptcy has nothing to do with the requirement.

Defendants, however, fail to consider the language in Section 525 which prohibits discrimination based upon a debt which was discharged under the Bankruptcy Act or Code. By focusing exclusively upon the language prohibiting discrimination because of the bankruptcy itself, defendants ignore that part of the statute which is directly applicable to this case. Plaintiffs have never argued that the financial responsibility requirement discriminates against persons because of their bankruptcy. Thus to say that the financial responsibility requirement does not discriminate against persons because of their bankruptcy misses the point. The financial responsibility requirement clearly does discriminate on the basis of debts which have been discharged in bankruptcy and therein lies the conflict with Section 525 of the Bankruptcy Code.

▇ The Court must therefore hold that by establishing an eligibility requirement not required of the general public for operating privileges, based solely on a debt which has been discharged, defendants directly contravene the statutory language of 11 U.S.C. § 525. The financial responsibility requirement is not one which is applied indiscriminately to all non-owner drivers; instead a person with a discharged debt is treated differently than a person who never had the debt. This difference effectively impairs a fresh start and is precisely what Section 525 was designed to prevent.

In an accompanying order the Court will enjoin enforcement of the Pennsylvania Financial Responsibility law, 75 Pa.C.S.A. §§ 1743, 1746 and 1747 insofar as these sections require plaintiff or members of her class to provide proof of financial responsibility in order to regain operating privileges. The order will further require the defendant to restore operating privileges to all members of plaintiff's class who are otherwise qualified.