Mr. John Henry Jones Chairman Construction Industry Licensing Board Post Office Box 2 Jacksonville, Florida 32201
Attention: Mr. J.K. Linnan, Executive Director
Dear Mr. Jones:
This is in response to your request for an opinion on the following question:
 IS THE CONSTRUCTION INDUSTRY LICENSING BOARD AUTHORIZED TO DENY AN APPLICATION ON THE GROUNDS OF LACK OF FINANCIAL RESPONSIBILITY WHEN THE APPLICANT HAS FILED FOR BANKRUPTCY, OR HAS BEEN ADJUDICATED A BANKRUPT, OR IS IN THE MIDDLE OF BANKRUPTCY PROCEEDINGS?
Your letter advises that your inquiry has been prompted by the board's receipt of an increasing number of applications for certification which reflect that the applicant has filed for bankruptcy. Section 489.115(4), F.S., provides that an applicant for certification shall furnish evidence of financial responsibility, credit and business reputation. The statute further states that the board shall adopt rules `defining financial responsibility based upon the applicant's credit history, ability to be bonded, and any history of bankruptcy orassignment of receivers.' (e.s.) Pursuant to this legislative directive, the board has adopted a rule which defines financial responsibility, and which provides that an application for certification may be denied if the applicant has filed for bankruptcy within the past five years preceding the application resulting in loss to consumers. See, Rule 21E-15.06, F. A. C.
It would appear, however, that serious questions may be raised with regard to these enactments in light of the United States Bankruptcy Code. Section 525 of 11 U.S.C. states:
[A] governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act. (e.s.)
The legislative history to the above statute notes that it was designed to codify the United States Supreme Court's decision in Perez v. Campbell, 402 U.S. 637 (1971), in which the court held that a state could not frustrate the congressional policy of a fresh start for a debtor by refusing to renew a driver's license because a tort judgment resulting from an automobile accident had been discharged in bankruptcy and hence unpaid. Many cases have followed and expanded upon Perez, for instance, in Grimes v. Roschler, 525 P.2d 65 (Cal. 1974), the Supreme Court of California held that the revocation of a building contractor's license by a state licensing board was invalid in light of Perez; in Handsome v. Rutgers University, 445 F. Supp. 1362 (D.N.J. 1978), the court struck down a state university's practice of withholding student transcripts based on Perez; in Rutledge v. City of Shreveport,387 F. Supp. 1277 (W.D.La. 1975), the court held that a police officer could not be fired for violating a rule of the Shreveport Police Department that prohibited him from filing a petition in bankruptcy; and in Henry v. Heyison, 4 B.R. 437 (1980), the District Court held that provisions of the Pennsylvania Financial Responsibility Law conflicted unconstitutionally with the fresh start provision of the Bankruptcy Code set forth in11 U.S.C. § 525.
A decision which appears to best illustrate the purpose and effect of the `fresh start' provision of the bankruptcy law is Coleman American Moving Services, Inc. v. J.L. Tullos, 8 B.R. 379 (1980). In this case, a debtor involved in bankruptcy proceedings sought an injunction against the United States Air Force alleging that the Air Force had discriminated against him by refusing to award him a contract despite his low bid. The Air Force argued that the bankrupt should not have the contract because the bankrupt had current liabilities which far exceeded his current assets and because he was not financially responsible. The bankruptcy court sided with the debtor and ordered the Air Force to award him the contract. The court observed that the purpose of the federal law was to prevent discrimination against debtors who had been or were in the process of being adjudicated as bankrupts. The court held that the Air Force was discriminating against this debtor because he was insolvent and in the middle of bankruptcy proceedings, and that such action violated the law. See also, In re: James E. Malley, 9 B.R. 832 (1981), in which the Bankruptcy Court overruled a state liquor authority which had declined to issue a license to an applicant who was a bankrupt.
The preceding cases clearly establish that a governmental agency may not deny a license to a person who has been adjudicated a bankrupt solely because the person filed for bankruptcy. Such action interferes with the debtor's `fresh start' to begin free of preexisting debt.
It should be noted that the law does not prohibit a governmental agency from considering future financial status. Cf., AGO 081-44 (discharge in bankruptcy does not relieve an uninsured motorist from the provisions of the Florida Financial Responsibility Law regarding proof of future financial responsibility). The legislative history to s 525 indicates that while this statute prohibits discrimination based solely on the basis of bankruptcy, `it does not prohibit consideration of other factors such as future financial responsibility or ability, and does not prohibit imposition of requirements such as net capital rules if applied nondiscriminatorily.' House Report at 367, U.S. Code Cong. Admin. News, 1978, pp. 150, 188.
The preceding cases involving state statutes are predicated, in part, upon the principle that acts of state Legislatures which interfere with or are contrary to the laws of Congress are invalid under the Supremacy Clause of the U.S. Constitution. See, Perez v. Campbell, 402 U.S. 637, 649 (1971), in which the court stated:
 As early as Gibbons v. Ogden, 9 Wheat 1, 6 L.Ed. 23 (1824), Chief Justice Marshall stated the governing principle-that `acts of the State Legislatures . . . [which] interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution,' are invalid under the Supremacy Clause. Id., at 211, 6 L.Ed. at 73 (emphasis added). Three decades ago Mr. Justice Black, after reviewing the precedents, wrote in a similar vein that, while `[t]his Court, in considering the validity of state laws in the light of treaties or federal laws touching the same subject, ha[d] made use of the following expressions: conflicting; contrary to; occupying the field; repugnance; difference; irreconcilability; inconsistency; violation; curtailment; and interference [,] . . . [i]n the final analysis,' our function is to determine whether a challenged state statute `stands as as obstacle to the accomplishment and execution of the full purposes and objectives of Congress' Hines v. Davidowitz, 312 U.S. 52, 67, 85 L.Ed. 581, 587, 61 S.Ct. 399 (1941) . . . .
Accordingly, under the rationale of the above cases, it would appear that the board must adhere to the terms of s 525, of the Bankruptcy Code. Therefore, I conclude that the Construction Industry Licensing Board may not consider the past or present bankruptcy of an applicant for certification as a contractor in determining whether to qualify an applicant for certification under s 489.115, F.S. Such action is prohibited by the U.S. Bankruptcy Code and the Supremacy Clause of the U.S. Constitution.
Sincerely,
Jim Smith, Attorney General
Prepared by: Patricia R. Gleason, Assistant Attorney General