**In the Matter of Randy Nathan BROWN, Debtor.**

**No. 99–10067/JHW.**

United States Bankruptcy Court, D. New Jersey.

Feb. 3, 2000.

Seymour Wasserstrum, Vineland, NJ, for Debtor.

### AMENDED OPINION ON MOTION TO COMPEL MUNICIPAL COURT TO RESCIND SUSPENSION OF DRIVING PRIVILEGES

JUDITH H. WIZMUR, Bankruptcy Judge.

Before the court for resolution is the debtor's motion to reinstate his driving privileges, which were suspended pre-petition for his failure to timely pay certain municipal court charges. The debtor is now making payments toward the municipal fine through his confirmed Chapter 13 plan. The debtor asserts that the municipal court's failure to reinstate his driver's license constitutes a violation of 11 U.S.C. § 525. He seeks an order compelling the municipal court to direct the Division of Motor Vehicles to rescind the suspension of his driver's license.

### FACTS AND PROCEDURAL HISTORY

The debtor, Randy Nathan Brown, filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 4, 1999. Among his debts were traffic fines owed to the Buena Vista Municipal Court, which he proposed to pay in full through his Chapter 13 plan.[1] Debtor's plan was confirmed without objection in court on May 12, 1999 and by order entered July 7, 1999 at $185 per month for 60 months.[2]

On August 2, 1999, debtor moved to compel the Buena Vista Municipal Court to direct the Division of Motor Vehicles ("DMV") to rescind the suspension of his driver's license, to the extent that the suspension of his driving privileges was based upon the nonpayment of traffic fines, and as long as he continued to make regular payments under his Chapter 13 plan.[3]

Recently, a New Jersey district court determined that a bankruptcy court may not direct a municipal court to rescind a driver's license suspension based on the debtor's failure to pay a traffic fine until after the discharge is granted. *In re Raphael,* 238 B.R. 69, 78 (D.N.J.1999). In the alternative, the district court determined that Eleventh Amendment sovereign immunity and the Anti–Injunction Act, 28 U.S.C. § 2283 would likewise preclude this relief.

 That district court rulings are entitled to substantial deference by bankruptcy courts is well established. *See, e.g., In re Jason Realty, L.P.,* 59 F.3d 423, 429 n. 2 (3d Cir.1995). Nevertheless, the decisions of a district court on questions of law are not binding on the bankruptcy courts in the district, because "there is no such thing as 'the law of the district' ". 238 B.R. at 77. *See also Threadgill v. Armstrong World Indus. Inc.,* 928 F.2d 1366, 1371 (3d Cir.1991). Because several of the issues discussed by the district court in *Raphael* were not presented to or resolved by the bankruptcy court, including Bankruptcy Code authority for directing reinstatement of driving privileges prior to discharge and the import of the Anti–Injunction Act, *see In re Raphael,* 230 B.R. 657 (Bankr.D.N.J.), *rev'd,* 238 B.R. 69 (D.N.J.1999), I feel compelled to return to the issues raised by the debtor's motion in this case.

---

**1.** The Buena Vista Municipal Court claim was initially listed by the debtor as $400, but was subsequently modified by the debtor to be $465.

**2.** Debtor's amended plan, which repeated the debtor's proposal to pay the Buena Vista Municipal Court claim in full, was confirmed in court on July 28, 1999 and by order entered August 5, 1999.

**3.** Debtor's previous motion, filed on April 26, 1999, seeking the same relief, was denied for various reasons.

## DISCUSSION

### 1. *Reinstatement of Driving Privileges.*

The first question raised here is whether the debtor's license may be reinstated while he is making payments under his Chapter 13 plan, but prior to actually receiving a discharge of the debt upon which the suspension is based.

In *Raphael*, the district court opined that municipal traffic fines may be discharged through a Chapter 13 plan. 238 B.R. at 78 n. 11. However, the court determined that the Bankruptcy Code provides no authority to direct the reinstatement of a debtor's driving privileges when the municipal court debt had not yet been discharged, and a valid, pre-petition license suspension is in force. The court concluded that:

> [A] bankruptcy court does not have the power to relieve a party of all of the burdens that were created by nonpayment of debt. The filing of bankruptcy does not necessarily cure the collateral consequences that were created by the debt, such as restoration of a license that was validly suspended prior to the filing of bankruptcy due to Debtor's pre-petition conduct. In addition, such a result would operate to undo a penal step taken by the State, namely the revocation of a drivers license, as well as interfere in the State's control over automobile licensing.

This Court finds no authority in the Bankruptcy Code that indicates that the creation or approval of a payment plan may operate to lift the suspension of a license that was revoked pre-petition. Accordingly, this Court holds that the approval of a Chapter 13 plan does not carry with it the authority to restore a Debtor's drivers license when such license was suspended pre-petition and the state has taken no action post-bankruptcy to compel payment. Therefore, the Bankruptcy Court improperly ordered the municipal court to lift Rafael's (sic) license suspension.

238 B.R. at 78.

■ I respectfully disagree with the *Raphael* conclusion. The authority to direct the municipal court to rescind a driver license suspension based on failure to pay a fine, which fine is proposed to be paid through a debtor's Chapter 13 plan, is found in 11 U.S.C. § 525(a). Section 525(a) provides in pertinent part that:

> a governmental unit may not deny, revoke; suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, ... a person that is or has been a debtor under this title ..., solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

11 U.S.C. § 525. The legislative history explains that this section:

> codifies the result of *Perez v. Campbell*, 402 U.S. 637, [91 S.Ct. 1704, 29 L.Ed.2d 233] (1971), which held that a State would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a drivers license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy.
>
> Notwithstanding any other laws, section 525 prohibits a governmental unit from denying, revoking, suspending, or refusing to renew a license ....
>
> · · ·
>
> The effect of the section, and of further interpretations of the Perez rule, is to strengthen the anti-reaffirmation poli-

cy found in section 524(b). Discrimination based solely on nonpayment could encourage reaffirmations, contrary to the expressed policy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 366–67 (1977); S.Rep. No. 989, 95th Cong.2d Sess. 81 (1978).

In *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), the United States Supreme Court held that a provision of the Arizona Motor Vehicle Safety Responsibility Act which failed to relieve a debtor from having his driver's license suspended for a judgment discharged in bankruptcy was invalid under the Supremacy Clause of the United States Constitution as being in conflict with the discharge provisions of the Bankruptcy Act. Adolfo Perez, driving without liability insurance on his vehicle, was involved in an automobile accident, resulting in injuries to the other driver and property damage to his car. Perez was sued in state court and judgment was entered. Perez filed for bankruptcy and received a discharge of the claims against him. Under state law, a discharge in bankruptcy did not relieve the debtor from repaying the judgment creditor, and required the suspension of his driver's license if the judgment remained unsatisfied for 60 days. The Court invalidated the statute, declining to allow the state "to force bankrupts to pay their debts despite their discharge." 402 U.S. at 654, 91 S.Ct. at 1713.

Following the enactment of the Bankruptcy Code in 1978, which included section 525 codifying the result of *Perez v. Campbell, supra,* courts have consistently held that a state cannot discriminate against debtors by creating additional licensing requirements for debtors simply because they filed for bankruptcy or because the judgment against them is discharged. *See, e.g., Henry v. Heyison,* 4 B.R. 437 (E.D.Pa.1980) (court enjoined enforcement of law that required debtors to obtain special liability insurance, even after discharge); *Hinders v. Miami Valley Regional Transit Auth.,* 22 B.R. 810, 812

(Bankr.S.D.Ohio 1982) ("A state cannot revoke or refuse to renew a driver's license only because of a judgment for damages discharged in bankruptcy."); *In re Layfield,* 12 B.R. 846 (Bankr.N.D.Ala.1981) (state could not withhold license pending purchase of special high-risk insurance after bankruptcy discharge); *In re Patterson,* 10 B.R. 860 (Bankr.E.D.Pa.1981) (following *Heyison* ).

Section 525, and its supporting legislative history, makes clear that following a debtor's discharge, the state cannot refuse to renew the debtor's driver's license. The statute also makes clear that a state "may not ... refuse to renew a license ... to ... a person that is ... a debtor under the title ... solely because such bankrupt or debtor ... has not paid a debt that is dischargeable in the case under this title." 11 U.S.C. § 525(a). Most courts have concluded that "[t]he language of 11 U.S.C. § 525 could not be more specific in prohibiting a governmental unit from denying or refusing to renew a driver's license 'solely because such bankrupt or debtor is or has been a debtor ... or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.' " *Hinders v. Miami Valley Regional Transit Author.,* 22 B.R. 810, 813 (Bankr.S.D.Ohio 1982). *See also In re Games,* 213 B.R. 773, 777 (Bankr. E.D.Wash.1997) ("If a debt has been discharged or will be discharged upon successful completion of a pending chapter 13 case, the state may not deny driving privileges to a person simply because he/she has not paid a civil debt."); *In re Bill,* 90 B.R. 651, 658 (Bankr.D.N.J.1988) ("It follows inexorably that Code § 525 applies in this case, and that suspension of the debtor's license solely because of failure to pay surcharges, or because of any delay in payment occasioned by the Chapter 13 plan, violates Code § 525."); *In re Shamblin,* 18 B.R. 800, 803 (Bankr.S.D.Ohio 1982) (debtor who receives discharge or will receive discharge upon completion of

plan not required to maintain proof of financial responsibility).

■ The plain meaning of section 525 is that a state cannot refuse to renew a debtor's license solely because he has not paid a "dischargeable" debt. The statute does not apply only to debts that are "discharged," although discharged debts are also included within section 525 protections. There has been no contention that the debts in question are not dischargeable under Chapter 13.

I conclude that where, as here, a Chapter 13 debtor is paying an otherwise dischargeable debt through a Chapter 13 plan, section 525 of the Bankruptcy Code prohibits a municipal court from refusing to renew the debtor's license, and authorizes the bankruptcy court to direct the municipal court to rescind its suspension of the debtor's driving privileges.

### 2. Sovereign Immunity.

■ In *Raphael,* the district court determined, alternatively, that "even if the power to lift the suspension of a driver's license is implicit in the Bankruptcy Code", 238 B.R. at 78–79, the bankruptcy court may not direct the municipal court to take any action, because "a New Jersey Municipal Court is the State for purposes of sovereign immunity pursuant to the Eleventh Amendment." *Id.* at 82. The Eleventh Amendment confirms that a state, or any arm of the state, may not be sued in federal court by an individual without its consent. U.S. CONST. amend XI. *See also Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

■ In holding that a municipal court is an arm of the state for sovereign immunity purposes, the district court reviewed the three *Fitchik* factors, *see Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655 (3d Cir.), *cert. denied,* 493 U.S. 850, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989), applied by the Third Circuit in cases in which the court is called upon to determine whether an entity is an arm of the state for Eleventh Amendment purposes. *See, e.g., Carter v. City of Philadelphia,* 181 F.3d 339 (3d Cir.), *cert. denied,* —— U.S. ——, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999); *Christy v. Pennsylvania Turnpike Comm'n.,* 54 F.3d 1140 (3d Cir.), *cert. denied,* 516 U.S. 932, 116 S.Ct. 340, 133 L.Ed.2d 238 (1995); *Bolden v. Southeastern Pa. Transp. Author.,* 953 F.2d 807 (3d Cir.1991), *cert. denied,* 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992). The first *Fitchik* factor, whether payment of the judgment would come from the state's treasury, was "not … the focus of [the District] Court's inquiry … for the simple reason that the case at bar concerns a request for injunctive relief instead of a monetary judgment." 238 B.R. at 81. The second and third *Fitchik* factors, the municipal court's status under state law and the municipal court's degree of autonomy, supported "the conclusion that the municipal court draws its power from the state". *Id.* at 82. Therefore, the district court concluded that New Jersey municipal courts are entitled to sovereign immunity protection from suit in the federal courts.

■ Because the first and most salient *Fitchik* factor was not considered by the district court, I respectfully disagree with the *Raphael* conclusion. The issue of whether an entity seeking Eleventh Amendment protection qualifies as an arm of the state does not depend upon the nature of the relief sought against that entity in a particular case. Rather, the character of the entity in all respects, according to all three *Fitchik* factors, must be analyzed. *See, e.g., In re Kish,* 221 B.R. 118, 126 (Bankr.D.N.J.1998) ("The question is … not whether monetary damages are requested in this case; it is whether the state would be responsible for a judgment for monetary damages if such judgment were requested and obtained against the entity in question.") *Cf. Carter v. City of Philadelphia,* 181 F.3d 339, 352–53 (3d Cir.1999) (The particular function of

the agency being carried out in connection with the relief sought may impact on the sovereign immunity protection available to the agency). Accordingly, the fact that the relief sought is an injunction rather than a monetary judgment should not remove the funding factor as an essential criterion to determine an entity's sovereign immunity status.

Notwithstanding the district court's belief that "no one [*Fitchik*] factor is dispositive", 238 B.R. at 81, the Third Circuit, in *Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir.1999), recently emphasized the critical and even dispositive nature of the funding factor in reaching the determination of whether a public entity constitutes an arm of the state.

We have twice held en banc that the three *Fitchik* factors are not weighed evenly and that the "most important" question in determining Eleventh Amendment immunity is "whether any judgment would be paid from the state treasury." *Bolden v. Southeastern Pennsylvania Transportation Authority*, 953 F.2d 807, 816 (3d Cir.1991); *Fitchik*, 873 F.2d at 659. As we explained in *Christy*, "[t]he special emphasis we place upon the funding factor is supported by the Eleventh Amendment's central goal: the prevention of federal court judgments that must be paid out of the state's treasury." 54 F.3d at 1145. [footnote omitted].

We are not alone in emphasizing the importance of the funding factor. The Supreme Court recognized in Hess that the vulnerability of the state's purse is considered "the most salient factor" in Eleventh Amendment determinations. See 513 U.S. at 48, 115 S.Ct. 394, 130 L.Ed.2d 245 (citing courts of appeals cases at length). Indeed, the "vast majority of [courts of appeals] ... have concluded that the state treasury factor is the most important factor to be considered ... and, in practice, have generally accorded it dispositive weight." *Id.* at 49, 513 U.S. 30, 115 S.Ct. 394, 130

L.Ed.2d 245 (ellipses in original) (quoted in *Christy*, 54 F.3d at 1145).

*Id.* at 348.

In *Carter*, the question presented was whether Pennsylvania's Eleventh Amendment immunity extends to the Philadelphia District Attorney's Office. The Circuit determined that the district court below erred in balancing the *Fitchik* factors. The district court recognized that the funding factor weighed against immunity, but relied on the remaining factors to conclude that the DA's Office is an arm of the state. The Circuit reversed, noting that in *Fitchik*, where the agency received one-third of its funds from the state, the funding factor weighed heavily against immunity, the agency had ambiguous status under state law that balanced slightly in favor of immunity, and the state had "fairly substantial" control over the agency. The *Fitchik* court determined that the agency was not an arm of the state because the funding factor outweighed the other two factors. In *Carter*, unlike *Fitchik*, all three factors weighed against immunity. The court highlighted that "the funding factor weighs more heavily against immunity than in *Fitchik*", *Id.* at 355, because no portion of the agency's funds are provided by the state and no portion of any judgment would be paid directly or indirectly by the state.

 Similarly, as to New Jersey municipal courts, the funding factor weighs heavily against immunity, outweighing the other two *Fitchik* factors, which balance in favor of immunity. *In re Raphael*, 230 B.R. at 672. In New Jersey, municipal courts are created and funded by their respective municipalities, which are separate taxing entities with legal authority to raise revenues for all municipal services, including municipal courts. The municipal courts are financially independent of the state. The state has no affirmative obligation to pay the liabilities incurred by the municipal courts. *Id.*

The second and third *Fitchik* factors support the designation of New Jersey municipal courts as arms of the state for sovereign immunity purposes. *Raphael,* 238 B.R. at 81–82, 230 B.R. at 670–72. However, on balance, these factors do not sustain the ultimate conclusion of Eleventh Amendment protection for municipal courts. As to the second *Fitchik* factor, the agency's status under state law, the district court relied in part on the role of the municipal court in adjudicating alleged state law violations, including certain criminal offenses. 238 B.R. at 81. However, in *Carter,* the Circuit held the "performance of an essential sovereign function on behalf of or in the name of the state does not give rise to state surrogate status under state law." 181 F.3d at 351. As to the third *Fitchik* factor, the autonomy factor weighs heavily in favor of immunity for New Jersey municipal courts, 238 B.R. at 81–82, 230 B.R. at 671–72. On balance against the other factors, *Carter* reminds us that the autonomy factor is less significant than the other factors in evaluating an entity's designation as an arm of the state. "[E]ven a substantial degree of control by the state would cause the autonomy factor to weigh only slightly in favor of according immunity." *Carter,* 181 F.3d at 354. As in *Fitchik,* juxtaposed against the heavy weight of the funding factor, the other two factors do not tilt the balance in favor of state surrogate status for municipal courts for Eleventh Amendment purposes.

In *Raphael,* 238 B.R. at 82, the district court cited three circuit cases as authority for the proposition that a municipal court has been held to be an arm of the state for purposes of Eleventh Amendment sovereign immunity. *See Kelly v. Municipal Courts of Marion County, Ind.,* 97 F.3d 902, 907–08 (7th Cir.1996); *Franceschi v. Schwartz,* 57 F.3d 828, 831 (9th Cir.1995), and *Harris v. Missouri Court of Appeals,* 787 F.2d 427, 429 (8th Cir.), *cert. denied,* 479 U.S. 851, 107 S.Ct. 179, 93 L.Ed.2d 114 (1986). These three cases are factually distinguishable.

In *Kelly,* guided by Indiana law, the Seventh Circuit distinguished between a municipal court, created by the state legislature, and a city court, created by the legislative bodies of city governments. In Indiana, a municipal judge's salary is paid by the state, while the salary of a city court judge is paid by the city. The source of funding for Indiana municipal courts is not otherwise discussed. By contrast, in New Jersey, municipal courts are created and funded by the municipalities, and the Third Circuit has focused on the funding source of the entity as the most critical criterion for state sovereign immunity under the Eleventh Amendment.

In *Franceschi,* the Ninth Circuit determined that California municipal courts have Eleventh Amendment immunity by looking at "the way state law treats the entity", 57 F.3d at 831. The court focused on the "extensive control" exercised by the state over the municipal courts, with no discussion of funding. *Id.*

Lastly, in *Harris,* in an action brought pursuant to 42 U.S.C. § 1983, the Eighth Circuit summarily dismissed the case against the Missouri Court of Appeals, which is clearly not a municipal court, because "courts as entities are not vulnerable to § 1983 suits, because they are protected by state immunity under the eleventh amendment." 787 F.2d at 429.

For the reasons advanced in *In re Raphael,* 230 B.R. 657, and the additional reasons set forth above, I conclude that the Buena Vista Municipal Court does not have sovereign immunity under the Eleventh Amendment and is subject to suit in federal court.

3. *Anti–Injunction Act.*

The district court in *Raphael* also held that an order from the bankruptcy court compelling the municipal court to restore a debtor's driver's license violates the provisions of the Anti–Injunction Act, 28 U.S.C.

§ 2283. The Anti–Injunction Act provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283. "The Act is an absolute prohibition against any injunction of any state court proceedings, unless the injunction falls within one of the three specifically defined exceptions in the Act." 238 B.R. at 83. Citing to *In re James,* 940 F.2d 46 (3d Cir.1991), *Raphael* concluded that the bankruptcy court's order improperly "intervened with and reversed a valid judgment of a state court." 238 B.R. at 84. Because the municipal court's decision suspending the debtor's driving privileges was not void or a legal nullity, "it was improper for the bankruptcy to collaterally examine the merits of the state court decision to suspend Rafael's (sic) driver's license." *Id.*

 I respectfully disagree that the Anti–Injunction Act precludes the relief sought by the debtor here. The Third Circuit has recognized that:

[a]lthough the Anti–Injunction Act, 28 U.S.C. § 2283, generally prevents a federal court from enjoining state court proceedings, section 105(a) of the Bankruptcy Code creates an exception to this general statutory rule by authorizing a bankruptcy court to issue any order necessary or appropriate to carry out the provisions of the Act. Therefore, a bankruptcy court generally is considered to possess the power to enjoin a pending state action that violates the automatic stay.

*In re James,* 940 F.2d at 51.

In *James,* the Third Circuit concluded that the post-petition entry of a default judgment against the debtor in state court forfeiture proceedings was not violative of the automatic stay, 11 U.S.C. § 362(a), because the forfeiture proceeding constituted the exercise of the state's police power, which is excepted from the automatic stay under 11 U.S.C. § 362(b)(4). Therefore, the state court judgment remained valid and enforceable, and was not subject to federal collateral review.

 The *James* court distinguished between the action by a bankruptcy court to stay a state court proceeding, which "is merely a suspension of the proceedings", *Id.,* and the action by a bankruptcy court to vacate a state court judgment following a collateral review on the merits. The former action is permissible ("a bankruptcy court has the power to stay proceedings." *Id.*) while the latter is not ("federal collateral review of a state proceeding is inappropriate." *Id.* at 52.).

 A bankruptcy court order directing a municipal court to rescind a debtor's license suspension is not a vacation of a state court judgment. Nor is such an order a collateral examination of "the merits of the state court decision to suspend [the debtor's] driver's license." 238 B.R. at 84. Rather, the order simply represents the enforcement, under 11 U.S.C. § 105(a),[4] of the provisions of the Bankruptcy Code that a governmental unit may not refuse to renew a debtor's license, even before a discharge is issued, if the license suspension is based on a dischargeable debt. 11 U.S.C. § 525(a). The municipal court's decision is final and remains undisturbed. In effect, the determination of the municipal court is suspended during the pendency of the Chapter 13 case. If the debtor successfully completes the payments, the debts will be discharged, and the debtor's driving privileges will remain in force. If the debtor does not complete the plan, and the case is dismissed, the municipal court judgment will be restored, and the debtor's driving privileges will again be suspended.

4. 11 U.S.C. § 105(a) provides in pertinent part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

The debtor's motion to direct the Buena Vista Municipal Court to rescind the suspension of debtor's driving privileges, based on his failure to pay municipal court charges, during the pendency of his Chapter 13 case, is granted. The reinstatement does not apply to any statutory suspensions imposed by the municipal court, or to any instance of debtor's failure to appear in response to a traffic summons. As well, if the debtor does not successfully complete his Chapter 13 case, the municipal court may reactivate the suspension.

Debtor's counsel shall submit an order in conformance herewith.