In re Clarence Butler ALSTON,
III, Debtor.

Clarence Butler Alston, III, Plaintiff,

v.

State Board of Medical Examiners
of South Carolina and Hartwell Z.
Hildebrand, M.D., Defendants.

Bankruptcy No. 98–05250–W.
Adversary No. 99–80001–W.

United States Bankruptcy Court,
D. South Carolina.

June 18, 1999.

Janne Berry Osborne, Orangeburg, SC, for plaintiff.

Lydia A. Eloff, Columbia, SC, for defendant.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of

Bankruptcy Procedure.[1] Based upon the pleadings and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Plaintiff, Clarence Butler Alston, III ("Dr. Alston"), a practicing physician, entered into an agreement on February 6, 1995 with the Defendant State Board of Medical Examiners of South Carolina ("State Board") wherein Dr. Alston agreed to submit to periodic alcohol and/or drug screening analysis as a condition for his continued license to practice medicine in South Carolina. The Defendant Hartwell Z. Hildebrand, M.D. ("Dr. Hildebrand") is the President of the State Board.

The alcohol and/or drug screening was to be performed by NCPS, Inc., the required provider for such services for the State Board.

Dr. Alston filed a voluntary Chapter 7 petition on June 19, 1998, scheduling, among others, a debt to NCPS, Inc. On November 3, 1998, Dr. Alston's debts, including that due NCPS, Inc., were discharged.

As an apparent result of the nonpayment of debt, Dr. Alston was suspended from further participation in NCPS, Inc.'s testing program. Since participation in the testing program was a condition of their agreement, on November 20, 1998, the State Board temporarily suspended Dr. Alston's license to practice medicine in South Carolina by and through an order signed by Dr. Hildebrand.

On January 5, 1999, based upon the suspension of his medical license, Dr. Alston filed this adversary proceeding against the State Board and its president Dr. Hildebrand based upon alleged violations of §§ 524 and 525. Dr. Alston is seeking actual and punitive damages as well as injunctive relief to prevent the enforcement of the State Board's suspension of his medical license and to prevent future suspensions.

On January 15, 1999, the Court held an emergency hearing on Dr. Alston's request for preliminary injunctive relief. On January 19, 1999, the Court entered an Order granting the motion for a preliminary injunction and prohibited the Defendants from suspending Dr. Alston's medical licence based upon the non-payment of the fees to NCPS, Inc. until further Order of the Court.

On March 26, 1999, the Defendants filed their Amended Answer and asserted sovereign immunity as an absolute defense to the allegations in the Complaint seeking damages. As to the allegations seeking injunctive relief, the Amended Answer states "[t]hat, even if the Plaintiff is successful in establishing violation of the applicable provisions of the Bankruptcy Code, which is denied, the only relief available to him is injunctive relief, which has already been granted herein, thus rendering this adversary proceeding moot." [2]

On April 26, 1999, the Defendants moved for summary judgment on the ground that this Court lacks subject matter jurisdiction to hear this matter because of South Carolina's sovereign immunity protected by the Eleventh Amendment.[3]

On the day of the hearing, May 11, 1999, Dr. Alston filed a Reply to the Motion for Summary Judgment. The Reply states as follows:

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* shall be by section number only and further references to the Federal Rules of Bankruptcy Procedure shall be by Rule number only.

2. The Defendants did not assert a defense of sovereign immunity in connection with the preliminary injunction.

3. The Eleventh Amendment provides:

   The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

There is no uniformity among the various Courts with respect to an Eleventh Amendment bar to litigation against state entities. Rather, the Courts appear to make such determinations on a case-by-case basis. In the instant case, the improper, callous and indifferent actions of the Defendants—as well as their blatant flaunting of the majesty of *this* Court—mandates that this matter go forward on its merits. Such a conclusion is consistent with the holdings in *Willis* [230 B.R. 619 (Bkrtcy.E.D.Okl. 1999)] and *Raphael* [230 B.R. 657 (Bkrtcy.D.N.J.1999)], the two (2) most recent examinations of this issue, as well as the application of the *Fitchik* test set forth in great detail in *Raphael*.

## CONCLUSIONS OF LAW

The Supreme Court confirmed the Doctrine of Sovereign Immunity three years ago by overruling *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 109 S.Ct. 2273, 105 L.Ed.2d 1 (1989) in its decision of *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Seminole*, acting pursuant to its exclusive constitutional right to regulate Indian Commerce (Art. I, Sec. 8, Clause 3), Congress had enacted The Indian Gaming Regulatory Act (Act), requiring the states where Indian tribes conducted gaming activities to negotiate in good faith with the tribe to form a compact. As authorized by the Act, the tribe brought suit in federal court against Florida and its Governor for failure to comply with the Act. Florida had not consented to the suit. The Court declared:

> In overruling *Union Gas* today, we reconfirm that the background principles of state sovereign immunity embodied in the Eleventh Amendment is not so ephemeral as to dissipate when the subject of the suit is an area, like the regulation of Indian commerce, that is under the exclusive control of the Federal government. Even when the Constitution vests in Congress complete lawmaking authority over a particular area, the Eleventh Amendment prevents congressional authorization of suits by private parties against unconsenting States. The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction. Petitioner's suit against the State of Florida must be dismissed for a lack of jurisdiction.

*Seminole Tribe of Florida v. Florida*, 517 U.S. at 72–73, 116 S.Ct. at 1131–32, 134 L.Ed.2d at 276–77.

Less than two years ago, the Fourth Circuit Court of Appeals was faced with the application of *Seminole* in a bankruptcy context. The Trustee of a Chapter 7 debtor brought an adversary proceeding in the Bankruptcy Court for the District of Maryland against the State of Maryland to recover the debtor's state income tax payment as a preferential transfer. In *In re Creative Goldsmiths of Washington, D.C., Incorporated*, 119 F.3d 1140 (4th Cir.1997), the Court held § 106(a) "unconstitutional and ineffective" and concluded:

> Because the holding in *Seminole* extended to restrict all federal jurisdiction over the states based on Article I powers, we hold in this case that Congress has no authority under the Bankruptcy Clause, U.S. Const. Art. I, Sec. 8, cl. 4, to abrogate state sovereign immunity in federal courts. We find unpersuasive the argument of the United States that the Bankruptcy Clause's provision for the enactment of "uniform laws on the subject of Bankruptcies," *id.*, requires Congressional powers under this clause to be distinguished from other Article I powers for the purpose of reconciliation with the restraints imposed by the Eleventh Amendment.

*In re Creative Goldsmiths of Washington, D.C., Incorporated*, 119 F.3d at 1145–46.

██ Pursuant to the mandates of *Goldsmiths*, a state has sovereign immunity as a defense to claims asserted under the Bankruptcy Code in Federal Court.

Therefore, the initial question that must be addressed is whether this adversary proceeding is an action against the State of South Carolina. Based upon what has been submitted to the Court, it is this Court's finding that the State Board is an agency of the State of South Carolina. The State Board is administered by the South Carolina Department of Labor Licensing and Regulation ("Department"). South Carolina Code Ann. § 40–1–40(B). The Division of Professional and Occupational Licensing of the Department is charged with protecting the public state wide through the regulation of professional and occupational licensees, and performs through various boards charged with the regulation of professional and occupational practitioners which in the case of the State Board, is the medical profession. South Carolina Code Ann. § 40–1–40(A). While Dr. Alston's counsel took the position at the hearing that the State Board was not an agency of the State of South Carolina because it had the authority to sue and be sued in its own name and had its own resources to satisfy any judgment, no evidence was presented at the hearing to support this position. As such, it appears to the Court that the State Board is an agency and arm of the State of South Carolina and that this action is against the State of South Carolina. Therefore, in so far as Dr. Alston seeks damages against the State Board, pursuant to the mandates of *Goldsmiths*, this Court is without subject matter jurisdiction.

Dr. Alston disagrees with this conclusion and relies upon *In re Raphael*, 230 B.R. 657 (Bkrtcy.N.J.1999) and *In re Willis*, 230 B.R. 619 (Bkrtcy.E.D.Okl.1999) as support for his position. However, the Court does not believe that these cases apply to the circumstances before the Court.

In *Raphael*, the Court determined that a bankruptcy proceeding against a municipal court was not a suit against the state and therefore did not involve sovereign immu-

nity. As stated above, the state wide regulatory function of the State Board, among other reasons, indicates that the State is the real party in interest in these proceedings and thus this proceeding is clearly distinguishable from the facts of *Raphael*. The other case relied upon by Dr. Alston is *Willis*, which held that § 106 abrogating sovereign immunity was validly enacted by Congress pursuant to Sec. 5 of the Fourteenth Amendment. This argument was expressly rejected by the Fourth Circuit in *Goldsmiths*. *In re Creative Goldsmiths of Washington*, 119 F.3d at 1146.

■ Based upon the doctrine of stare decisis, the Court finds that pursuant to the directives of *Seminole* and *Goldsmiths*, § 106(a) is unconstitutional and does not abrogate South Carolina's sovereign immunity in this adversary proceeding.[4]

However, while this Court does not have subject matter jurisdiction over an action against the State Board itself, Dr. Alston may be able to file a similar law suit in State Court.

There is another alternative, however: suing the state in state court. See generally, S. Elizabeth Gibson, *Sovereign Immunity in Bankruptcy: The Next Chapter*, 70 Am.Bankr.L.J. 195, 203–208 (1996) (discussing state court litigation against states as a bankruptcy remedy still available after *Seminole*). The Eleventh Amendment does not apply in state courts. *Hilton v. South Carolina Pub. Rys. Comm'n*, 502 U.S. 197, 205, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991). While bankruptcy courts' jurisdiction over "cases under title 11" is exclusive, their jurisdiction over "civil proceedings arising under title 11" or arising in or related to cases under title 11 is not. See 28 U.S.C. § 1334(a)–(b). Thus, state courts have concurrent jurisdiction over the latter. Furthermore, under the Supremacy Clause, state courts must exercise jurisdiction over federal claims.

---

4. Dr. Alston has not asserted that the State of South Carolina has waived its sovereign immunity with respect to the subject matter of this law suit.

See *NVR,* 206 B.R. at 843 (citations omitted). "The Supremacy Clause makes [federal] laws 'the [S]upreme Law of the Land,' and charges state courts with a coordinate responsibility to enforce that law according to their regular modes of procedure." *Howlett v. Rose,* 496 U.S. 356, 367, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990). See also *O'Brien v. Vermont, Agency of Natural Resources,* 216 B.R. 731, 737 (Bankr.D.Vt. 1998), on this point.

*In re Lapin,* 226 B.R. 637 (9th Cir. BAP 1998). *Also see* Klee, Johnston and Winston, *Dealing with the Government: Sovereign Immunity, Eleventh Amendment, and Bureaucratic Impunity,* SD 24 ALI–ABA 159.

■ Additionally, the finding that this Court does not have subject matter jurisdiction over this action against the State Board does not prescribe a dismissal of the entire adversary proceeding. As stated recently by the Bankruptcy Court for the Eastern District of Arkansas, the Supreme Court has permitted law suits against state officials to obtain injunctive relief under the *Ex Parte Young* Doctrine.

The Eleventh Amendment is not, however, a talisman providing state agencies with the authority or right to ignore federal law. The state and its agencies are bound by federal law, just as any other creditor. The state must respect and comply with the Bankruptcy Code, including provisions regarding the automatic stay, 11 U.S.C. § 362, the discharge injunction, 11 U.S.C. § 524, and prohibitions against discriminatory treatment, 11 U.S.C. § 525. Thus, although a suit may not be maintained in the federal bankruptcy court against the state to enforce the Bankruptcy Code, the state is obligated to comply with the provisions of the Code. In order to uphold Congressional intent and provisions of federal law, the courts have utilized the doctrine espoused in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), permitting suits against the state officials to obtain injunctive relief. See *Seminole,* 517 U.S. at 71 n. 14, 116 S.Ct. 1114 ("[A]n individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law, see, e.g., *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)").

*In re Kidd,* 227 B.R. 161 (Bkrtcy.E.D.Ark. 1998). Other Courts have similarly used the *Ex Parte Young* Doctrine to enjoin a state officials continued violation of federal law.

Under the *Ex Parte Young* doctrine, a federal court may, consistent with the Eleventh Amendment, enjoin state officials to conform their future conduct to the requirements of federal law. "[P]ersons aggrieved by a state's continuing violation of [the bankruptcy code] may obtain injunctive relief under *Ex Parte Young* in order to remedy a state officer's ongoing violation of Federal law." *Schmitt v. Missouri Western State College (In re Schmitt),* 220 B.R. 68, 72 (Bankr.W.D.Mo.1998) (citing *Seminole,* 517 U.S. at 73 n. 16, 116 S.Ct. at 1131 n. 16). While the *Ex Parte Young* doctrine does not allow for the relief being requested here—damages from the state for violations of the discharge order—it does empower the court to prohibit CFTB officials from continuing their collection efforts.

*In re Lapin,* 226 B.R. at 646. Therefore, to the degree that Dr. Alston seeks injunctive relief, as opposed to retrospective monetary damages, against Dr. Hildebrand as the President of the State Board, this Court does have subject matter jurisdiction.

For all of the reasons stated within, the Defendants' Motion for Summary Judgment is granted in part and denied in part. The Complaint against the State Board of Medical Examiners of South Carolina must be dismissed based upon this Court's lack of subject matter jurisdiction. However, as stated within, these issues may be raised again in the State Court. As to the

Motion for Summary Judgment as it relates to injunctive relief against the Defendant Hartwell Z. Hildebrand, M.D. or other responsible state officials, the motion is denied and by separate Order of the Court, a hearing on Dr. Alston's request for permanent injunctive relief against Dr. Hildebrand will be scheduled for a trial.

**AND IT IS SO ORDERED.**